**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| RODNEY WALKER, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | NO. CIV-11-1364-HE |
| ) | |
| TOWN OF HENNESSEY, ) | |
| ) | |
| Defendant. ) | |

### ORDER

Plaintiff Rodney Walker filed this action against his former employer, the Town of Hennessey ("Hennessey"), asserting procedural and substantive due process claims and a First Amendment retaliation claim. Defendant Hennessey has filed a motion for summary judgment, which is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "A genuine dispute as to a material fact 'exists when the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party.'" Carter v. Pathfinder Energy Services, Inc., 662 F.3d 1134, 1141 (10th Cir. 2011) (quoting Zwygart v. Bd. of Cnty. Comm'rs, 483 F.3d 1086, 1090 (10th Cir.2007)). Having considered the submissions of the parties in light of this standard, the court concludes defendant's motion should be granted in part and denied in part.

### Background

The Town of Hennessey operates under the statutory town board of trustees form of

government. *See* 11 Okla. Stat. §§12-101-12-114. Tiffany Tillman is the Town Clerk and Town Administrator. On April 11, 2002, the Town Board of Hennessey approved the Employee Handbook, which has applied to all Hennessey employees since that date. While the Handbook specifies that the Town reserves the right "to revise, supplement or rescind any policies or portion of the handbook," it excepts from any changes its "employment-at-will policy permitting [the employee] or the Town of Hennessey to end [their] relationship for any reason at any time." Doc. #44-2, Introductory Statement.[1] The Handbook also includes the following provisions.[2]

> The following information is to establish for the employees in the Town of Hennessey's service a system of personnel rules based on merit principles and designed to secure more efficient administration governing the appointment, removal, promotion, transfer, layoff, and discipline of such employees and other benefits of town government on the basis of merit and fitness.
>
> 101 Nature of Employment
> Employment with the Town of Hennessey is voluntarily entered into, and the employee is free to resign at will at anytime, with or without notice or cause, so long as there is no violation of applicable federal or state law. Policies set forth in this handbook are not intended to create a contract, nor are they to be construed to constitute contractual obligations of any kind or a contract of employment between the Town of Hennessey and any of its employees. The provisions of the handbook have been developed at the discretion of the Board of Trustees and, except for its policy of employment-at-will, may be amended or cancelled at any time, at the Town of Hennessey Board of Trustees sole discretion.
>
> 126 Progressive Discipline . . .

---

[1] *Page references for briefs and exhibits are to the CM/ECF page number. For example, Attachment A to Exhibit 1 to defendant's brief is referred to as Doc. #44-2.*

[2] *The excerpts include sections and parts of sections from the Handbook, which are pertinent to plaintiff's claims. A dispute exists as to whether the Handbook attached to plaintiff's brief was an unapproved draft or the version approved by the Board of Trustees. The distinctions between the two Handbooks submitted by the parties are immaterial for purposes of resolving defendant's motion. Nonetheless, the court has considered the Handbook attached to plaintiff's brief to be the document in effect during plaintiff's tenure with the Town of Hennessey.*

Although employment with the Town of Hennessey is based on mutual consent and both the employee and the Town of Hennessey have the right to terminate at will, with or without cause or advance notice, the Town of Hennessey may use progressive discipline at its discretion.

Disciplinary action may call for any of four (4) steps – verbal warning, written warning, suspension with or without pay, or termination of employment – depending on the severity of the problem and the number of occurrences. There may be circumstances when one or more steps are bypassed. Progressive discipline means that, with respect to most disciplinary problems, these steps will normally be followed: a first offense may call for a verbal warning; a next offense may be followed by a written warning; another offense may lead to a suspension; still another offense may then lead to termination of employment.

146 Dismissals

Dismissals are discharges or separations made for misconduct, inefficiency or other just cause. A department head or the Town Administrator may dismiss any employee at any time with the approval of the Board of Trustees. But no dismissal of a regular employee shall take effect unless prior to the effective date thereof, the department head gives to such employee a written statement, setting forth in substance the reasons therefore and files a copy of such statement with the Board of Trustees and in the employee's personnel file.

148 Disciplinary Actions

The Board of Trustees may dismiss or suspend without pay, upon the recommendation of the Town Administrator or department head, an employee for any just reasonable cause. The following are some of the examples of just and reasonable cause:

Refusal to comply with the proper order of an authorized superior.
Destruction or theft of property belonging to the Town of Hennessey.
A conviction of a felony or misdemeanor involving moral turpitude.
Violation of policies and procedures of a department or the Town which may bring the department or the Town into public disrepute or impair its efficiency or service.
Acceptance of a gift or fee given with the intent of influencing the employee in performance of their duties.
The direct use of official position of authority for personal profit or advantage.
Falsification of any records including falsification of any application papers.

149 Demotions

The Town Administrator or department head may demote an employee to a different pay grade by changing their job classification or reduce the salary of an employee within the range provided and according to the rules of pay for cause. A written statement of the reasons for such actions shall be furnished

> to the affected employee and the copy filed with the Board of Trustees and in the personnel file of the affected employee at least (5) five days prior to the effective date of action. No demotion shall be made as a disciplinary action. Final approval of any demotion shall reside with the Board of Trustees.

Doc. #49-1.

Plaintiff signed an Employee Acknowledgment Form dated September 24, 2002, which states in pertinent part:

> I have entered into my employment relationship with the Town of Hennessey voluntarily and acknowledge that there is no specified length of employment. Accordingly, either I or the Town of Hennessey can terminate the relationship at will, with or without cause, at any time, so long as there is no violation of applicable federal or state law.
>
> Since the information, policies and benefits described here are necessarily subject to change, I acknowledge that revisions to the handbook may occur, except to the Town of Hennessey's policy of employment-at-will. . . . Furthermore, I acknowledge that this handbook is neither a contract of employment nor a legal document.

Doc. #44-3..

On May 13, 2009, five Trustees of the Town Board voted unanimously to demote plaintiff from Chief of Police to patrolman and to terminate another Hennessey police officer, Don Thrash, effective immediately. The next day the Town Board voted to appoint Terry Gillock as interim police chief. In July, Hank Weber was hired as Hennessey's new police chief.

The Hennessey Board of Trustees voted to terminate plainitff on November 16, 2009. Police Chief Weber recommended his termination and testified that it was because of plaintiff's inadeuqate job performance. Plaintiff responds that during his twenty year tenure with the Hennessey police department he was never disciplined and never received a less than satisfactory job performance review. In fact, he asserts, in August 2010, Chief Weber

4

wrote him a glowing recommendation.

Plaintiff asserts that when he was demoted and terminated the procedure outlined in the Handbook for such employment actions was not followed (no written statement was prepared detailing the reasons for the action), that no reason or explanation was given for either employment decision and he was not provided a hearing or allowed to respond to any charges.[3] He contends he was discharged in retaliation for exercising his First Amendment right of free speech.[4]

Plaintiff bases his retaliation claim on several different incidents which he contends involved "protected speech," including his proposed testimony in a criminal trial ("trial testimony"). Plaintiff was subpoenaed to testify in the trial of Michael Ethan Moeller, who was charged with assault and battery with a dangerous weapon for shooting Alex Hardin, the mayor's son. Plaintiff advised Chief Weber between November 5 and November 9, 2009, that he anticipated testifying that the shooting was in self-defense. Weber then informed Tillman of the subpoena and plaintiff's anticipated testimony. One of the town trustees, Gritz, was present during the conversation.

The second basis for plaintiff's free speech claim stems from another employee's alleged observation, around May 5, 2009, of a town employee possibly masturbating in his office while on duty. Plaintiff reported the incident to the town administrator, alhough he

---

[3]*For purposes of defendant's motion, the court assumes plaintiff's accounting in his response of the circumstances surrounding his demotion and termination to be true.*

[4]*In support of its assertion that plaintiff was not terminated in violation of his free speech rights, defendant refers the court to extensive pages of deposition excerpts, without citing to specific testimony. That is unacceptable. The court is not obliged to wade through multiple pages of a deposition to find the evidence the defendant might be relying on. The asserted fact (Defendant's Fact #13) will not, though, be stricken as plaintiff requests, as some of the cited evidence is manageable in size. E.g., Doc. #44-10.*

asserts it was not "part of [his] job function, nor a requirement of his job" to report the incident to the Kingfisher County Sheriff's Department. Doc. #49, p.1 5. Plaintiff asserts that someone did report the matter to the sheriff's department and that angered Mayor Hardin, who, a couple of days later, decided plaintiff probably was the source of the information. He expressed that opinion to Tillman and at least one town trustee. Plaintiff was told that all the trustees believed he had reported the incident to the sheriff's department. The town attorney also believed that plaintiff was the person who contacted a tv station about the matter, although plaintiff testified he did not.

Plaintiff claims he also engaged in protected speech when he reported to Tillman, on several occasions, that other employees suspected that the same individual was watching pornography on his city computer, and suggested that she access it to determine if it contained pornographic images.

The next category of protected speech or conduct is based on plaintiff's alleged failure to comply with demands by Tillman that he terminate Hennessy police officer Don Thrash, after Thrash, between January and May, 2009, had cited the Mayor's nephew for public intoxication, stopped a town trustee for traffic violations and allegedly used excessive force when detaining and arresting a friend/former relative of Tillman. Plaintiff testified he refused to fire Thrash because there was no just cause for his termination. The trustees terminated Thrash on May 13, 2009. Plaintiff also contends Tillman demanded that he force an arresting officer to change certain domestic abuse charges involving the town treasurer's son from county to city court.

Analysis

Procedural due process – May 13, 2009, demotion

6

Defendant moves for summary judgment on plaintiff's due process claim that is premised on his May 13, 2009, demotion. It argues the claim is untimely. Plaintiff states in a footnote that he is not seeking damages based on his demotion, but relies on it as evidence of pretext in support of his termination claim. Doc. #49, p. 42 n.4. Defendant's motion will therefore be granted as to this claim.

Procedural due process – termination

Plaintiff claims his procedural due process rights were violated when he was terminated without notice and a hearing, and was not provided a post-termination opportunity to defend himself. He contends the Employee Handbook, by establishing a just cause standard for dismissal, created a property interest in continued employment that could not be curtailed without constitutional protections. Defendant denies the Handbook created an implied contract. It contends plaintiff was an at will employee who did not have a property interest in continued employment, relying on both specific language in the Handbook and 11 Okla. Stat. § 12-114.

"To determine whether a plaintiff was denied procedural due process, [the court] engage[s] in a two-step inquiry: (1) Did the individual possess a protected interest to which due process protection was applicable? (2) Was the individual afforded an appropriate level of process?" Schulz v. City of Longmont, 465 F.3d 433, 443 (10th Cir. 2006) (internal quotations omitted). State law determines whether a property interest exists. Id. "State law sources for property interests can include statutes, municipal charters or ordinances, and express or implied contracts. Id. at 444 (internal quotations omitted).

Plaintiff contends the Handbook created an implied handbook based on the "just cause" standard for dismissal. The Tenth Circuit "has made it clear that when a person's

7

employment can be terminated only for specified reasons, his or her expectation of continued employment is sufficient to invoke the protections of the Fourteenth Amendment." West v. Grand Cnty., 967 F.2d 362, 366 (10th Cir. 1992). The Handbook does tie both dismissals and disciplinary actions to "just cause," but it also repeatedly states that the employer-employee relationship is at-will. Plaintiff, himself, acknowledged when hired that the Handbook was not a contract of employment and that he could be terminated with or without cause.[5] Doc. #44-3. The court does not, though, have to resolve the tension between the just cause and at-will language in the Handbook because Hennessey was governed by the "statutory town board of trustees form of government." 11 Okla. Stat. § 12-101.

Under Oklahoma law, a governing town board of trustees may remove, suspend, layoff or demote an employee "solely for the good of the service." 11 Okla. Stat. § 12-114. This standard has repeatedly been held to be insufficient to create a constitutionally protected property interest. Lane v. Dover, 761 F.Supp. 768, 771 (W.D.Okla. 1991), *aff'd,* 951 F.2d 291 (10th Cir. 1991); Youngwolf v. Town of Stratford, 2013 WL 775355, at * 1 (W.D.Okla. 2013); *see generally* Parker v. Town of Chelsea, 275 Fed.Appx. 769, 771 (10th Cir. 2008) (unpublished) (dicta) ("The district court properly concluded that Mr. Parker was an at-will employee who, according to Oklahoma law, could be terminated 'solely for the good of the service,' Okla. Stat. tit. 11, § 12-114, and therefore could not have a protected property interest in continued employment. As a result, the district court concluded that the Employee Handbook could not have created an implied contract altering the at-will nature of plaintiff's

---

[5]*The form specifies that the relationship could be terminated at will, "so long as there is no violation of applicable federal or state law." Doc. #44-3. Neither party focuses on the impact, if any, of that language.*

8

employment.").

Section 12-114 does provide that "the board by <u>ordinance</u> may establish a merit system and provide for its organization and functioning, and provide for personnel administration and regulation of personnel matters."[6] 11 Okla. Stat. § 12-114 (emphasis added). Plaintiff contends the Employee Handbook "is a merit and personnel system established by official action of Defendant's Board of Trustees meeting the requirements of an ordinance." Doc. #49, p. 12. He asserts that it "is an official act of the Trustees, formalized by a quorum of the Trustees, passed by majority vote at a public meeting." *Id.* at p. 24.

The court does not agree with plaintiff that "the Trustees passed an ordinance when passing the handbook." Doc. #49, p. 25. "Ordinance" is defined in the Oklahoma Municipal Code as "a formal legislative act of a municipal governing body which has the force and effect of a continuing regulation and a permanent rule of conduct or government for the municipality." 11 Okla. Stat. § 1-102(7). The Code provides that "[t]he municipal governing body may enact ordinances," and specifies how that is to be done – ordinances must be published or posted, an ordinance "may contain only one subject and the subject shall be expressed in its title," and "[e]very ordinance enacted by a municipal governing body shall be entered in an ordinance book immediately after its passage." 11 Okla. Stat. §§ 14-101,104-106. In addition, "[t]he enacting clause of all [town] ordinances passed by a

---

[6]*The statute further provides that "[t]he board of trustees may remove for cause any appointive officer by a majority vote of all its members." 11 Okla. Stat. § 12-114. Plaintiff was not an appointive officer. See 11 Okla. Stat. § 1-102 (" Officer or official means any person who is elected to an office in municipal government or is appointed to fill an unexpired term of an elected office, and the clerk and the treasurer whether elected or appointed.").*

9

municipal governing body shall be: . . . 'Be it ordained by the Board of Trustees of the Town of ____.'" 11 Okla. Stat. 14-104.  Plaintiff has offered no evidence that the Handbook's passage complied with any of these statutory requirements.  While there may be no "legal difference" between the manner in which the Trustees vote to pass an ordinance and their vote to adopt the handbook, Doc. #49, p. 25, that does not elevate the Handbook to the status of an ordinance and plaintiff cites no authority indicating otherwise.  There are a variety of actions that a Board of Trustees might take by majority vote at a public meeting without the result constituting an "ordinance."

As the court concludes the Handbook was not an ordinance, it could not "create a heightened standard for termination and procedural requirements such that a vested property right would be created in [plaintiff]."  Youngwolf, 2013 WL 775355, at *2 ("Because the Stratford Board of Trustees does not possess the legal authority to adopt policies altering the 'for the good of the service' standard for employment, Stratford's Employment Policies and Practices manual did not create a heightened standard for termination."); *accord* Parker v. Town of Chelsea, 2006 WL 2945386, at *2 (N.D.Okla. 2006) (Section 12-114 "by its own terms, precludes the possibility that the Town, via the Board of Trustees, could adopt an Employee Handbook that alters the nature of the Town's relationship with its employees. In other words, the Employee Handbook cannot supplant the conditions of employment provided by state statute."), *rev'd on other grounds*, 275 Fed.Appx. 769 (10th Cir. 2008).[7]

In light of the court's conclusion that plaintiff has failed to show he had a

---

[7]*While he does not have a due process claim, plaintiff may have a breach of implied contract claim based on the town's failure to follow the termination procedures outlined in the Handbook. See* Parker, *275 Fed.Appx. at 771-73.*

10

constitutionally protected property interest, his procedural due process claim fails.[8] Defendant is entitled to summary judgment on this claim.

Substantive due process

In its brief, defendant discusses a substantive due process claim, stating that "[i]f Plaintiff is alleging that there was a violation of substantive due process . . . ." Doc. #44, p. 22. Defendant's argument is directed to the allegations in Count 2 of the complaint, in which plaintiff seeks to recover for defendant's alleged "arbitrary, capricious, and unreasonable" discipline and termination of plaintiff. Plaintiff failed to respond to that aspect of defendant's motion other than to note in a footnote that it is dependent on his property interest due process claim and "[b]ecause he has a property interest, his substantive due process claim survives." Doc. #49, p. 42 n.4. That is not a sufficient response and plaintiff thus confessed defendant's motion in this regard. LCvR56.1(f). The court also notes that neither the allegations in the complaint nor the facts of this case, viewed in the light most favorable to plaintiff, support a substantive due process claim. Defendant is entitled to summary judgment on this claim.

First Amendment Retaliation

Plaintiff's remaining claim is based on defendant's alleged violation of his First Amendment rights. He contends he engaged in protected speech and that defendant retaliated against him by terminating him. Defendant asserts that plaintiff's speech was not

---

[8]The court is not persuaded by plaintiff's estoppel argument, which was raised for the first time in his response brief. Plaintiff acknowledges that the doctrine is not generally applied against the state or its political subdivisions, and he offers no evidence or authority that its application is warranted under the circumstances present here. Moreover, plaintiff could have asserted a breach of implied contract claim, but did not. See supra note 8.

11

protected and that he cannot show that his discharge was substantially motivated by his speech.

"The [Supreme] Court has made clear that public employees do not surrender all their First Amendment rights by reason of their employment." Garcetti v. Ceballos, 547 U.S. 410, 417 (2006). They have a constitutional "right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Id.* To determine whether defendant retaliated against plaintiff in violation of his First Amendment rights, the court applies the Pickering test, now modified" by Garcetti. Dixon v. Kirkpatrick, 553 F.3d 1294, 1301-02 (10th Cir. 2009). "The test comprises five elements, called 'prongs': (1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct. The first three 'prongs' are said to be issues of law to be decided by the court; the last two are factual issues to be decided by the factfinder." *Id.* at 1302. Defendant addresses only the first and fourth factors in its response.

To evaluate plaintiff's claim, the court initially must identify the speech which resulted in the alleged retaliation. Plaintiff contends defendant violated his First Amendment rights based on "his "perceived reporting of a non-subordinate, fellow employee potentially masturbating and viewing pornography at work to the Kingfisher County Sheriff and the

12

news media," Doc. #49, p. 32;[9] his alleged failure to terminate a Hennessey police officer and his subpoenaed trial testimony. *Id.*

Plaintiff's retaliation claim fails insofar as he relies on his perceived reporting of the masturbation incident to demonstrate a constitutional violation, as there was no speech by him. He cites no authority for his assertion that his free speech rights were violated based on what others thought he said and courts have repeatedly held that "there can be no First Amendment claim when an employee is falsely accused of making statements uttered by someone else." Wasson v. Sonoma Cnty. Junior Coll., 203 F.3d 659, 663 (9th Cir. 2000); *accord* Fogarty v. Boles, 121 F.3d 886, 891 (3rd Cir. 1997) ("[T]he absence of speech-in fact, its explicit disclaimer by plaintiff-is fatal to the plaintiff's claim."); Jones v. Collins, 132 F.3d 1048 (5th Cir. 1998) (employment action taken on mistaken belief that employee had spoken negatively regarding a matter was not a First Amendment violation as "[a] free speech claim depends on speech, and there was none in this case.") (internal quotations omitted).

The court also concludes that plaintiff cannot premise his First Amendment claim on his asserted refusal to fire his subordinate. The guiding principle is that speech is made pursuant to official duties if it involves 'the type of activities that [the employee] was paid

---

[9]*In discussing his First Amendment claim, plaintiff does not rely on his alleged reporting of the masturbation incident to Tillman, but focuses on the "perceived reporting to outside law enforcement or media." Doc. #49, p. 35. Even if plaintiff had based his claim in part on that "speech" and if, as plaintiff asserts, neither behavior (masturbating or watching pornography) was a crime, as a law enforcement officer, plaintiff presumably could be expected as part of his job responsibilities to report such conduct to his supervisor. Since* Garcetti *the Tenth Circuit has "taken a 'broad' view of the meaning of speech that is 'pursuant' to an employee's 'official duties.'"* Thomas v. City of Blanchard, *548 F.3d 1317,1324 (10th Cir. 2008). It can include speech that "'deals with activities that the employee is not expressly required to perform.'" Id. (quoting* Brammer-Hoelter v. Twin Peaks Charter Academy, *492 F.3d 1192, 1203 (10th Cir.2007)).*

13

to do.'" Chavez-Rodriguez v. City of Sante Fe, 596 F.3d 708, 713 (10th Cir. 2010) (quoting Green v. Bd. of County Comm'rs, 472 F.3d 794, 801 (10th Cir. 2007). That conduct clearly falls within the scope of plaintiff's job duties as police chief.

The remaining category of claimed protected speech consists of plaintiff's subpoenaed trial testimony. Plaintiff was subpoenaed to testify in the trial of an individual who was charged with shooting the mayor's son. According to plaintiff's evidence, he was terminated approximately a week after the police chief, the town administrator and a town trustee learned that his testimony would be adverse to the son. Defendant did not address this speech in its motion and mentioned it in its reply only to state that "Plaintiff's being subpoenaed to testify in the Harding case ... [has] nothing to do with any exercise of free speech by Plaintiff." Doc. #52, pp. 8-9. It is not clear from plaintiff's evidence why he was subpoenaed to testify – whether he was an investigating officer or had other information from prior police work that was pertinent to the case.[10] The court assumes, though, that he was testifying in his capacity or based on information he acquired in his capacity as a police officer for the Town of Hennessey and that the speech was on a matter of public concern. Reilly v. City of Atlantic City, 532 F.3d 216, 230 (3d Cir. 2008) (noting its prior holding that appearing as a witness at a bail hearing was a matter of public concern because of "the integrity of the truth seeking process") (internal quotations omitted).

The appellate courts are split regarding the extent to which the First Amendment protects testimony a public employee gives as part of his or her job duties. The Third Circuit held in Reilly, 532 F.3d at 231, that "[w]hen a government employee testifies truthfully, s/he

---

[10]Tillman testified that plaintiff was "on scene" the evening of the shooting. Doc. #44-9, p. 105.

is not simply performing his or her job duties; rather, the employee is acting as a citizen and is bound by the dictates of the court and the rules of evidence." (internal citation and quotations omitted). The court concluded that the fact "[t]hat an employee's official responsibilities provided the initial impetus to appear in court is immaterial to his/her independent obligation as a citizen to testify truthfully." *Id.* The Seventh Circuit reached the same conclusion in Fairley v. Andrews, 578 F.3d 518 (7th Cir. 2009). When discussing whether subpoenaed testimony is protected by the First Amendment, the court stated

> Plaintiffs' second theory is that they were bullied and threatened in order to deter them from testifying in Fields. This claim falls outside Garcetti. The Jail likely requires guards to testify on its behalf and pays them for time at court. Testifying against the Jail might not be part of the job, but that doesn't matter. Even if offering (adverse) testimony is a job duty, courts rather than employers are entitled to supervise the process. A government cannot tell its employees what to say in court, see 18 U.S.C. § 1512, nor can it prevent them from testifying against it.

*Id.* at 524-25.

The Ninth Circuit disagrees. In Huppert v. City of Pittsburg, 574 F.3d 696, 707-09 (9th Cir. 2009), the court refused to follow Reilly, holding that the plaintiff's subpoenaed testimony before a grand jury was pursuant to his duties as a police officer and was not protected by the First Amendment. In an unpublished decision, Kiehle v. County of Cortland, 486 Fed.Appx. 222 (2nd Cir. 2012), the Second Circuit concluded that a county employee, when testifying voluntarily, without a subpoena, at a Family Court hearing, based on information she obtained during the course of her public employment, was not testifying "as a private citizen on a matter of public concern," but rather "testified as a government employee," *id.* at 224, and, therefore, her statements were not protected from employer discipline.

15

The Tenth Circuit has not directly addressed the issue. In <u>Reilly</u> the Third Circuit cites <u>Worrell v. Henry</u>, 219 F.3d 1197 (10th Cir. 2000) as support for its statement that "[m]any courts of appeals have joined this court and the Court of Appeals for the Fifth Circuit in recognizing the fundamental role in-court testimony plays in our society and its importance to the question whether a public employee's speech is protected by the First Amendment." <u>Reilly</u>, 532 F.3d at 230.

The plaintiff in <u>Worrell</u> had testified as an expert witness for the defendant in 1986 in a capital murder case. The defendant was charged with killing an undercover Oklahoma Bureau of Narcotics and Dangerous Drug ("OBNDD") agent. At that time Worrell was employed as a private investigator, although he had previously been an FBI agent. His testimony, regarding proper arrest procedure, supported a self-defense theory – that the undercover agent had attempted to arrest the defendant without identifying himself as a law enforcement officer. The defendant was convicted, but the jury rejected the prosecution's request for the death penalty. Worrell's testimony generated considerable anger and resentment among NBDD agents, one of whom, William Turner, in 1994, had offered ONBDD support to a drug task being organized by Gary Henry, a state district attorney. When Turner learned that Henry had offered Worrell the position of corrdinator of the task force, he called Henry and revoked his offer of assistance. Henry then rescinded the job offer, telling Worrell it was not because of his testimony, but the loss of the ONBDD's cooperation. Worrell sued, alleging that the recission of the job offer violated his right to free speech under the First Amendment.

Applying the <u>Pickering</u> balancing test,[11] the district court concluded that Worrell's interest in exerercising his First Amendment rights nine years earlier was outweighed by the district attorney's interest in providing citizens with an effective drug task force. The Tenth Circuit agreed. In reaching that decision it noted that "[i]n the last few decades, federal courts have afforded additional protection to witnesses who are employed by the government, concluding that truthful testimony is protected by the First Amendment and that a government employee may not be fired or subjected to other adverse action as a result of such testimony." *Id.* at 1204-05. It explained that "[a]ffording constitutional protection to the truthful testimony of public employees protects both employees' interest in free expression and the judicial system's interest in arriving at the truth." *Id.* at 1205. However, the court recognized that the First Amendment's protection was not absolute, that there were instances in which "public employees' interests in free expression and the policy of encouraging truthful and uninhibited testimony" is outweighed by "government entities' interests as employers." *Id.*

<u>Worrell</u> preceded the Supreme Court's decision in <u>Garcetti</u> and the Worrel did not testify as part of his official job duties. It is not clear whether the Tenth Circuit, in light of <u>Garcetti</u>, would now conclude that a public employee's subpoenaed testimony, that arises out of his or her official responsibilities, constitutes protected speech. While <u>Worrell</u> is not controlling, considering its language and rationale, *id.* at 1213 ("truthful testimony is protected by the First Amendment") and the persuasive reasoning of the Third Circuit in

---

[11]<u>Pickering v. Bd. of Educ.</u>, 391 U.S. 563 (1968).

Reilly, the court concludes plaintiff's prospective testimony was protected speech.[12]

The nest question is whether plaintiff has submitted evidence demonstrating that his protected speech was a motivating factor in defendant's decision to terminate him.[13] While defendant asserts that plaintiff's free speech did not motivate the Trustees to fire him, plaintiff has come forth with sufficient evidence to demonstrate pretext, including the temporal proximity of the termination to knowledge of his likely testimony, his testimony that the day he was terminated Chief Weber denied knowing why his termination was on the agenda for the Trustee's meeting, and evidence pertaining to defendant's post-hoc justification for the employment decision.

## Conclusion

As plaintiff has failed to show he had a constitutionally protected property interest in his job or that his substantive due process rights were violated, defendant's motion for summary judgment [Doc. #43] is **GRANTED** with respect to plaintiff's procedural and substantive due process claims. Judgment will be entered in defendant's favor as to those claims when the action is concluded with respect to all parties and claims. Fed.R.Civ.P. 54(b). Due to the existence of material questions of fact, defendant's motion is **DENIED** with respect to plaintiff's First Amendment retaliation claim to the extent it is premised on his subpoenaed trial testimony.

---

[12]*The fact that plaintiff had not yet testified at the time of the alleged retaliation is immaterial. See* Fairley, *578 F.3d at 525 ("Threatening penalties for future speech goes by the name 'prior restraint,' and a prior restraint is the quintessential first-amendment violation.").*

[13]*As noted previously, defendant argued that plaintiff's First Amendment claim is foreclosed because his speech and conduct were undertaken as part of his official duties and the Board of Trustees did not terminate him because of any protected speech. Defendant did not address the other prongs of the Garcetti-Pickering test – public concern, balancing and same action in absence of protected speech.*

18

**IT IS SO ORDERED**.

Dated this 17th day of June, 2013.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE